[No. 19316.  Department One.  August 18, 1925.]

FILA MELOVITCH, *by her Guardian ad Litem A. H. Melovitch, Respondent,* v. THE CITY OF TACOMA, *Appellant.*[1]

MUNICIPAL CORPORATIONS (437, 467)—DEFECTS IN STREETS—BARRIERS—GUARDING DANGEROUS PLACES—QUESTION FOR JURY. The evidence warrants a finding that a small child fell from a viaduct at a point where there was an unprotected bay in the sidewalk, amounting to a trap, as far as a small child was concerned, where her fall at that point was observed from a distance, and she was found beneath the place.

SAME (569)—CLAIMS AGAINST CORPORATION—VERIFICATION—NOTARIAL SEAL. The failure of the notary, taking the verification of a damage claim against a city, to attach his notarial seal does not invalidate the claim, especially where there was parol evidence that the claim was actually sworn to.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered March 2, 1925, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries.  Affirmed.

*E. K. Murray, Leo Teats,* and *Lorenzo Dow,* for appellant.

*Boyle & Boyle,* for respondent.

PARKER, J.—This action was commenced in the superior court for Pierce county in behalf of the plaintiff, Fila Melovitch, a minor, seeking recovery from the defendant city for personal injuries suffered by her from falling off an elevated sidewalk, alleged to have been negligently maintained by the city, in that it had not properly guarded the sidewalk by suitable railings. A trial upon the merits in that court sitting with a jury resulted in a verdict awarding recovery against the city in the sum of $1,000, and a judgment

[1]Reported in 238 Pac. 563.

rendered thereon accordingly, from which the city has appealed to this court.

It is contended in behalf of the city that the trial court erred in overruling its motions, timely made, to take the case from the jury and decide, as a matter of law, that no recovery could be had against the city. We first notice this contention in so far as it rests upon the claim of insufficiency of the evidence to support recovery. At the time the child was injured, she was five and one-half years old. Puyallup avenue runs east and west. At the place in question, the surface of its concrete roadway and sidewalks are approximately twenty feet above the natural surface of the ground. They rest upon a masonry viaduct something more than a block long. On the ground under and near the structure are railway tracks and some industrial plants.

The sidewalk on the north side of the roadway has a bay extension, having the effect of widening it outwardly to the north approximately seven feet, for a distance along the walk of some twenty feet or more, the main portion of the walk being also about seven feet wide. This bay was constructed as a part of the concrete structure with a view to the future construction of a stairway down from one, or possibly both, ends of it to the ground. The ends of the bay are straight and at right angles to the sidewalk line. The concrete surface of the bay is but a widening outwardly of the concrete surface of the sidewalk.

A railing, consisting of posts and rails of two-inch pipes, runs along the outer edge of the sidewalk across the ends of the bay and along the outer edge of the bay, there being no division or mark of any nature separating the surface of the sidewalk from the surface of the bay. There are but two rails of two-inch pipes, one 25 inches above the surface of the sidewalk and

bay and another 18 inches higher. The rails across the east end of the bay are a little more than three inches farther east than the east end of the surface of the bay, and are therefore outside of its surface at that end. There is no other protection whatever at that end of the bay. The rails along the sidewalk are over five inches inside of its outer edge.

The child, her mother and another woman were walking east on the north sidewalk over the viaduct. As they proceeded, the child was sometimes ahead, sometimes back of or alongside of the women, as her inclinations dictated. When the women had reached a point about opposite, or possibly just past, the east end of the bay, the child fell to the ground. The only witness who can be said to have seen the child fall or start to fall testified as follows:

"Q. I will ask you if, on or about the 13th of November, 1924, you were in that vicinity during about the time that a little girl fell off that sidewalk down below?

"A. I was just across the street from where she fell.

"Q. I wish you would tell the court and jury what, if anything, you saw there with reference to this accident?

"A. Well, I was standing just straight across the street from where the accident happened; I was talking to a man, and I just happened to be looking across and seen two women coming down the street. Just as they got to where the little girl fell off, I seen something flash, looked more like some papers she had in her hand. I thought it was one of the women throwing something over. These women stopped eight or ten feet beyond, and she noticed the little girl was gone. I ran across the street right at that time and seen that it was this little girl.

"Q. Where did you see the little girl?

"A. She was lying down below on the tracks there.

"Q. Could you tell whether the little girl was behind or ahead?

"A. She must have been just even with them, because I never seen her.

"Q. Could you tell whether or not the little girl was playing around that railing there?

"A. Well, I don't think she could be, because when they walked it seemed like they walked past—there is a point there that projects out right at that point. They walked up there, and just as they did there was this flash. It looked like a newspaper."

The argument upon this branch of the case is, in substance, that there is no evidence, or fair inference to be drawn from the evidence, as to how or what caused the child to fall. It seems to us that the facts we have noticed, as to which there is practically no dispute, warranted the jury in believing, as they evidently did, that the child fell off the east end of the bay; that is, between the east end of the surface of the bay and the lower rail, which we have noticed was over three inches farther east and twenty-five inches above that end of the surface of the bay; that being the only protection there that a small child would have walking easterly along the sidewalk. We think it is easy to be seen, in the light of these facts, that, in all probability, the child, walking along to the left, and possibly slightly back of, the women close to the edge of the main sidewalk, unconsciously moved a little farther to the north onto the surface of the bay, which we have seen was indistinguishable from the surface of the sidewalk, and walked into this, which we might characterize as a trap, in so far as protection to a small child is concerned, though it could hardly be so characterized with reference to a grown person. It is seemingly inconceivable that the child, without stopping, should suddenly fall off the edge of the main sidewalk where the rail was

over five inches inside its outer edge. We conclude that the evidence was ample to warrant the jury in finding the city's negligent maintenance of the rail outside the east end of the bay was the proximate cause of the child's injury. This, it seems to us, must have been the jury's view of the cause of the child falling.

It is further contended in behalf of the city that the trial court erred in overruling its motions to take the case from the jury, upon the ground that no sufficient verified claim was presented to the city in behalf of the child. Section 257 of the city charter reads:

"All claims for injuries to the person, alleged to have been caused or sustained by reason of defects, want of repair or obstruction of any of the highways, streets, alleys, sidewalks or crosswalks of the city, shall be presented in writing to the council within thirty days after such injuries shall be alleged to have been received. Such writing shall state the time, place, cause, nature and extent of the alleged injuries so far as practicable, and shall be verified by affidavit of the claimant to the effect that the same is true. The omission to present any such claim in the manner or within the time in this section provided, shall be a bar to an action against said city therefor."

The only claimed defect or insufficiency of the claim presented in behalf of the child to the city, is that the notary before whom the claim was sworn to did not attach his notarial seal to his jurat evidencing the making of the affidavit, though he signed his name and appended his official title thereto. Counsel for the city rely upon the decisions of this court in *Gates v. Brown,* 1 Wash. 470, 25 Pac. 914, and *Stetson & Post Mill Co. v. McDonald,* 5 Wash. 496, 32 Pac. 108, where it was held that the failure of the notary to attach his official seal to his jurat evidencing the verification of a lien claim against real property was fatal to its validity. These decisions, we do not think are controlling. The

affidavit of a claimant appended to such an instrument serves the purpose of an acknowledgement to a conveyance of real estate, in that thereby the instrument is entitled to be placed of record in the office of the county auditor, to the end that third parties may have notice thereof. No third parties are interested in controversies of this nature. This is in no sense a lien claim, nor could it possibly affect any interest of any third party in real property.

Our decision in *Bell v. Spokane*, 30 Wash. 508, 71 Pac. 31, seems against the city's contention here made. In that case the jurat evidenced the verification of the claim on the day prior to the occurring of the injury. Parol evidence was admitted for the purpose of curing this defect by showing that it was actually sworn to after the occurring of the injury. In the case before us, it was proven that the claim was actually sworn to in behalf of the child before the notary who signed the jurat. It seems to us the failure of the notary to attach his seal was curable, if necessary to be cured, by the actual proof of the fact that the claim was verified as certified in the notary's jurat. It is worthy of note that this charter provision is a short and harsh statute of limitations. This court has repeatedly construed this, and other similar charter and statutory provisions, liberally in favor of the claimant, wherever an honest effort has been made to comply therewith and the municipality has been fairly notified of the nature of the claim and its foundation. *Piper v. Spokane*, 22 Wash. 147, 60 Pac. 138; *Born v. Spokane*, 27 Wash. 719, 68 Pac. 386; *Hammock v. Tacoma*, 40 Wash. 539, 82 Pac. 893; *Mulligan v. Seattle*, 42 Wash. 264, 84 Pac. 721; *Ellis v. Seattle*, 47 Wash. 578, 92 Pac. 431; *Hase v. Seattle*, 51 Wash. 174, 98 Pac. 370, 20 L. R. A. (N. S.) 938; *King v. Spokane*, 52 Wash. 601, 100 Pac. 997; *Lindquist v. Seattle*, 67 Wash. 230, 121 Pac. 449.

We conclude that the claim filed in behalf of the child was not so defective in form or substance as to bar her maintenance of this action.

The judgment is affirmed.

TOLMAN, C. J., HOLCOMB, BRIDGES, and MAIN, JJ., concur.